**TRAWICK et al. v. SABIN.**

No. 17840. Opinion Filed Dec. 6, 1927.

(Syllabus.)

1. **Contracts — Invalidity of Contract Against Morality or Public Policy.**

A contract which is against morality or public policy is, and should be, void.

2. **Same — Recovery on Illegal Contract Denied.**

When a plaintiff brings an action based on an illegal contract, he cannot recover thereon.

Error from County Court, Lincoln County; S. A. Cordell, Judge.

Action by E. S. Sabin against L. M. Trawick and another, partners. Judgment

for plaintiff, and defendants bring error. Reversed and remanded, with directions to dismiss.

Thos. G. Andrews and Clyde L. Andrews, for plaintiffs in error.

Jas. A. Embry, for defendant in error.

HEFNER, J. E. S. Sabin, as plaintiff, sued L. M. Trawick and Roy Simpson, as defendants in the county court of Lincoln county to recover the sum of $712.50.

The defendants were known as the Stroud Bit Company and conducted the business of sharpening bits for various oil companies. The plaintiff was employed by the defendants. He sharpened bits and delivered them to various oil companies. In his evidence, the plaintiff, on his direct examination, stated his contract as follows:

"Q. You take a bill out there, showing the number of bits, and you have the foreman receipt for the bits? On that day you probably took out six bits? A. I would not say exactly. Q. But you charged them for two more bits than they received? A. Yes, sir. Q. Your understanding with Trawick was that you were to do this, and you were to divide the money? A. Yes, sir. Q. How much did you charge for these bits? A. $2.25 apiece. Q. Then you would charge him with two more bits than you sharpened and two more bits than you delivered? You were to get $4.50, and you were to have one-half of that? A. Yes, sir."

The plaintiff claims the amount sued for was based upon the contract set out above. In other words, the oil companies were charged for bits that were never sharpened and were never in the shop and the plaintiff testified that he and the defendants were to divide this amount equally between them. In addition to this contract, the plaintiff was paid $5 and $6 per day for the time he worked for the defendants. The daily wage had all been paid and no part of it was in controversy in this suit.

At the conclusion of the testimony, the defendants requested the court to instruct the jury to return a verdict for the defendants, which motion was overruled. On the case being submitted to the jury it returned a verdict for the plaintiff in the sum of $712.50, and judgment was entered thereon. From which judgment, the defendants have appealed to this court.

The contract as testified to by the plaintiff is void because it is against good morals and public policy. He testified that he was instructed to deliver drilling bits to various oil companies and to charge the companies with more bits than were actually sharp-

ened or delivered. He claims that he should recover from the defendants one-half of the amount that was charged against the oil companies for bits that were neither sharpened nor delivered to such companies. In other words, the plaintiff claims that $1,425 was collected from the various oil companies for services that were never rendered; and that he is entitled to one-half of the amount so collected by virtue of his contract with the defendants.

No court should lend its assistance in carrying out the terms of a contract of this character. A contract which has for its purpose anything which is repugnant to the common law, or against morality or public policy is, and should be, void. When a plaintiff brings an action and, before he can recover, it is necessary for him to show an illegal contract, he cannot recover thereon.

Some contracts are void because they are against a criminal statute, others because they are against good morals or public policy. When an action is based on an illegal contract, the courts should not, and will not, enforce it. This is, should be, and always has been the law. This court in the case of Citizens' National Bank of Chickasha v. Mitchell, 24 Okla. 488, 103 Pac. 720, in the third paragraph of the syllabus, said:

"In any action brought in which it is necessary to prove an illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce alleged rights directly springing from such contract."

The plaintiff contends that, while the court will not lend its aid to the enforcement of an illegal or immoral contract, yet when the contract has been performed and a fund has been created, as is practically admitted in the instant case, the court will not permit one party to keep the entire fund. In answer to this, we may say that when plaintiff's claim is necessarily based upon an illegal or immoral contract, he cannot recover. The contention above made is not an open question in this state. In the Chickasha Bank Case, supra one of the questions determined was this:

. "Although said contract may have been void as against public policy, the same having been carried out and executed with the exception of a final accounting between the parties, will one party thereto, under the facts of the case, be compelled to contribute to the other his share of the profits?"

In answer to this question, this court in that case said:

"An accounting of the profits of a partnership will not be awarded, although the partnership was only part of a contract, of which the other portions were illegal."

It is therefore clear that the contention made by the plaintiff has already been decided against him in the Chickasha Bank Case.

Under the facts in the case at bar, we think the court should have left the parties where it found them. The judgment of the trial court is therefore reversed, with directions to dismiss the same.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 13 C. J. p. 424, §360; p. 460, §401; 6 R. C. L. pp. 707, 712; 2 R. C. L. Supp. p. 188; 4 R. C. L. Supp. p. 435; 5 R. C. L. Supp. p. 365.    (2) 13 C. J. p. 493, §440.