## Louisville Bar Ass'n v. Mazin.

Feb. 20, 1940.

Hubert Meredith, Attorney General, for complainant.

OPINION BY CREAL, COMMISSIONER—Confirming findings of Board of Commissioners of State Bar Association.

The Board of Commissioners of the Kentucky State Bar Association have found Benjamin Mazin, a member of the Jefferson county bar, guilty of unprofessional conduct and recommended that he be suspended from the practice of law in this state for a period of three months and publicly reprimanded. The proceeding is before us on the report and recommendation of the Board of Commissioners and the record on hearing had before the board on the complaint against the respondent.

The complaint against the respondent, as amended, charged in substance that he through paid runners and solicitors employed by him had solicited employment of himself as attorney for parties in a number of designated cases and in this solicitation and in order to secure employment had made false statements pertaining to himself and others. The Board of Commissioners sustained complaints as to count 3, known as the Hockenjos complaint, and count 4, known as the Hartman complaint, but dismissed all other counts.

Without going into detail it is sufficient to say that there is evidence that one Harris solicited employment of respondent in the Hockenjos and Hartman cases and secured the signature of one of them to a contract for such employment on a printed form of respondent. A member of the investigating committee of the bar association testified that during the progress of their investigation respecting ambulance chasing and professional runners in Louisville, respondent voluntarily admitted that he had been guilty of ambulance chasing but stated that if the bar association was in earnest about breaking up that practice he would be glad to cooperate and would promise to never again engage in it.

It is argued in substance in brief for respondent that the complaint against him, if established, involved no infraction of the law of our commonwealth nor such unprofessional conduct as would warrant disbarment or suspension, and the case of Chreste v. Louisville Railway Company, 167 Ky. 75, 180 S. W. 49, L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867, is cited. In that case it was

alleged as a matter of defense that Chreste's contract with his client was procured through persuasion and solicitation of an agent employed by him and that the contract was champertous and against public morals and public policy and therefore, null and void. It was held by this court that the portion of the answer pleading that the contract was void presented no defense, and that a demurrer thereto was properly overruled. As will be seen from a reading of that opinion the court was dealing solely with the validity of a contract procured by or through means not measuring up to strict ethical standards. The question of the right of the state to regulate and control the practice of law so that public interest may be subserved and protected and to that end suspend or disbar from practice attorneys guilty of unprofessional conduct was not involved, and, this court did not put its stamp of approval upon what is generally termed "ambulance chasing" but on the contrary took occasion to voice its disapproval of that method of obtaining law business. It is further pointed out in that opinion that public policy is a variable quantity in that it often varies with the habits, capacities and opportunities of the public. That is true because public policy is often artificial in its character and not always based on fundamental principles of right and justice. Truth, reality and innate principles of rectitude, however, are not variable quantities but are infinite and unyielding. A discussion of the evil consequences growing out of the solicitation of business through professional runners or ambulance chasers would be mere repetition of what has already been said by this and other courts. Such practice is known by the legal profession as well as by the public generally to be opposed to public interest, calculated to bring the profession into reproach and to lower the judiciary in public esteem.

It must be kept in mind that statutes such as **ours** (Section 97), providing that a person convicted of treason or felony should not be permitted to practice in any court and (Section 104) providing for the suspension of an attorney neglecting or refusing to pay over money collected for his client, are not exclusive but are only supplementary and cumulative and do not prevent the disbarment or suspension of attorneys for other unprofessional conduct. Apart from any statute, an attorney may be suspended or disbarred for unprofession-

al conduct even though not criminal in its character. Lenihan v. Commonwealth, 165 Ky. 93, 176 S. W. 948, L. R. A. 1917B, 1132; 5 Am. Juris. 424, Section 273; 7 C. J. 842, Section 58.

It is generally recognized that ambulance chasing or solicitation of business through professional runners and solicitors is grounds for suspension or disbarment. 5 Am. Juris. 425, Section 274 and notes; 7 C. J., Section 843 and notes; Annotations 73 A. L. R. beginning at page 401.

In fairness to the respondent it must be said that as pointed out in the report of the committee conducting the hearing there is no showing of anything unethical or unprofessional on his part in the handling of litigation or the adjustment of claims entrusted to him. On the other hand, there is evidence that his conduct in these particulars measured up to strict ethical standards. This and other extenuating circumstances were properly considered by the Board of Commissioners in making its recommendations.

It is our conclusion that the report of the Board of Commissioners of the State Bar Association should in every respect be confirmed, and that respondent be and he is hereby suspended from the practice of law in any of the courts of this state for a period of three months and that he be publicly reprimanded.

Whole court sitting.